# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WARDELL JONES, ) | 1:11-cv-02136 LJO GSA |
|     Plaintiff, ) | |
| v. ) | **FINDINGS AND RECOMMENDATIONS REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |
| MICHAEL ASTRUE, Commissioner of Social Security, ) | |
|     Defendant. ) | |

## **BACKGROUND**

Plaintiff Wardell Jones ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for supplemental security income benefits pursuant to Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Gary S. Austin, for findings and recommendations to the District Court.

//

//

1

# FACTS AND PRIOR PROCEEDINGS[1]

Plaintiff filed an application for benefits in May 2008, alleging disability as of December 17, 2005.  AR 139-142.  Plaintiff's applications were denied initially and on reconsideration; he then requested a hearing before an Administrative Law Judge ("ALJ").  AR 86-89, 92-99, 101-103.  ALJ Christopher Larsen held a hearing and subsequently issued an order denying benefits on April 28, 2010, finding Plaintiff was not disabled.  AR 53-60.  On October 21, 2011, the Appeals Council denied review.  AR 1-4.

**Hearing Testimony**

ALJ Larsen held a hearing on March 15, 2010, in Fresno, California.  Plaintiff appeared and testified; he was assisted by attorney Jeffrey Milam.  Vocational Expert ("VE") Cheryl Chandler also testified.  AR 14-49.

Plaintiff was born on March 6, 1959; he was fifty-one years old on the date of the hearing.  AR 19.  He is six feet tall and weighs 255 pounds.  AR 21.  Plaintiff is married and lives with his wife.  He has a valid driver's license without restriction.  When traveling long distances he shares driving responsibilities with his wife.  AR 19-20.  If he sits too long in the car, his back, knees and arthritis bother him.  AR 21.

After high school, Plaintiff obtained an associates degree in law.  When asked whether he used his associates degree "for any kind of work" that he performed, Plaintiff replied "no."  AR 21.  Plaintiff has also served in the United States Army.  AR 22.  He last worked in 2002, and stopped working due to arthritis, stress and depression.  His doctors told him working would be "unfeasible" due to his health.  AR 22.

As a result of depression and alcohol abuse, Plaintiff has been incarcerated for possession of a controlled substance (cocaine).  AR 22-23.  Although he could not identify a sober date, Plaintiff indicated he had been sober for "over a year," then stated he would "go with January 1,

---

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

2010," as a sober date. AR 23. He then corrected his answer to January 1, 2009.[2] AR 23. With regard to incarceration, Plaintiff has served time in jail and in prison. AR 24. Following a recent two-year prison sentence, Plaintiff was on parole for a period of three years. He was released from parole the day of the hearing. AR 24-25. After he was most recently released from prison, Plaintiff would use cocaine and alcohol two to three times a week; such use is referred to as "chipping." AR 25. Plaintiff's drug use preceded his mental illness as he began using drugs at the age of seventeen. AR 26.

Plaintiff has been battling mental illness since the time of his military service. He does not currently receive VA disability, but he is looking into it. AR 25. He also has trouble with concentration and focus. AR 23-24. When asked to describe his mental condition, Plaintiff indicated his problems include sleep apnea and not sleeping through the night, and voices. At one point he was hearing voices daily, but medication has lessened that symptom. AR 26. Presently, he hears voices once every two or three months "if that." AR 27, 32. His inability to focus is what keeps him from working. AR 27, 32. For example, he cannot watch an entire movie because he loses focus after fifteen to twenty, or thirty, minutes. AR 28. His focus or concentration would be worse without medication. AR 33. He also has difficulty being around other people and prefers to isolate himself. AR 28, 38. Additionally, Plaintiff has trouble keeping to a schedule, but his wife helps him. AR 28. Plaintiff has been hospitalized overnight in the past for depression as he has considered suicide. AR 29. He was last hospitalized in November or December of 2009. AR 29.

Plaintiff sees his primary care physician every week as a result of the pain he feels. AR 30. He takes various medications and the doctors advised him to rest much of the day. The medications he has been prescribed treat stress, depression and tension. AR 30. He does not have any bad side effects from the medications. AR 32. He lies down two or three times a day

---

[2] Counsel pointed out that if he'd been sober for over one year, January 1, 2010, couldn't be Plaintiff's sobriety date as that date passed just three months prior to the date of the hearing. AR 23.

3

for at least an hour and a half to two hours or more.  AR 31.  Despite taking medication to treat sleep difficulties, he still suffers from poor sleep.  AR 32.  Plaintiff suffers from sleep apnea and uses a C-PAP machine at night.  AR 33-34.  Plaintiff also uses the C-PAP machine to treat anxiety and stress because stress causes breathing problems, and when he uses the C-PAP it helps him to focus and breathe.  AR 34.

Low back pain is a daily problem.  Plaintiff has pain all day long, and often has trouble sitting and standing for long periods of time.  AR 35-36.  He also has sharp needle-like pain in his right knee and has received physical therapy as a result.  AR 36.  According to his physicians, Plaintiff is supposed to "walk every 15 minutes every day" to reduce his weight.  AR 37.  He has not received pain injections, nor undergone surgery for these problems specifically.  AR 37.  Plaintiff has undergone surgery in the past for gunshot wounds to his arms and legs.  AR 37-38.

Plaintiff used to enjoy bowling, and going to hockey games and to movies.  He no longer enjoys being in a crowd.  AR 38.  He does regularly attend Cornerstone Church and remains involved with Behavioral Intervention's support group.  AR 38-39.  When at the support group, although there are others around, because they share similar feelings and experiences it lessens Plaintiff's anxiety.  AR 39.  While attending Sunday services in the big congregational setting,[3] Plaintiff typically sits in the back so he can see what is happening around him.  AR 39-40.  Also, he gets up and stands now and then due to the length of the service, and has had to leave the service because of pain.  AR 40.

When asked to describe a normal day around the house, Plaintiff indicated that he tries to help his wife with cleaning or laundry.  AR 40.  He cannot sweep, for example, and even has difficulty getting dressed in the morning.  AR 41.  He has difficulty cooking because he forgets he has something on the stove, or he'll go to the microwave intending to retrieve a cup of coffee when he has already placed the cup in the refrigerator.  AR 40-41.

---

[3] Plaintiff also regularly attends the men's ministry service every Tuesday evening.  AR 40.

4

VE Chandler identified Plaintiff's past work to include: security guard, semi-skilled and light per the DOT[4], with an SVP[5] of three; and warehouse worker, unskilled and medium to heavy, albeit temporary. AR 44.

In the first hypothetical question, the VE was asked to consider an individual of Plaintiff's age, education and experience, who can perform light work but may only occasionally reach above the shoulder with his left arm, and who may only occasionally kneel. AR 44. VE Chandler indicated such an individual would be able to perform Plaintiff's past work as a security guard. AR 44. Alternatively, such an individual could also work as a: (1) food preparer, light and unskilled, DOT 311.674-014, with approximately 13,400 jobs available in California; (2) counter salesperson, light and unskilled, DOT 295.366-010, with approximately 15,000 jobs available in California; and (3) cashier, light and unskilled, DOT 211.462-010, with approximately 120,000 jobs in California. AR 45.

In a second hypothetical, VE Chandler was asked to consider an individual of Plaintiff's age, education and experience, who can lift and carry up to ten pounds, and who can stand and walk for a total of one hour and sit for a total of four hours in an eight-hour workday. AR 45-46. The VE indicated such an individual would be unable to perform any work. AR 46.

In a third hypothetical, the VE was asked to consider an individual of Plaintiff's age, education and experience, who was unable to maintain attention and concentration throughout an eight-hour workday. VE Chandler indicated no jobs would be available for such an individual. AR 46.

With additional limitations imposed upon the first hypothetical by Plaintiff's counsel, wherein an individual was markedly restricted in the ability to remember and carry out detailed instructions, was moderately impaired in the ability to maintain attention and concentration for extended periods of time, would encounter moderate difficulty in completing a normal workday

---

[4] "DOT" refers to the Dictionary of Occupational Titles.

[5] "SVP" refers to Specific Vocational Preparation.

5

without psychological interruption, coupled with a moderate ability to respond appropriately to changes in the work setting, VE Chandler indicated that such an individual would likely be unable to perform any work were those factors sustained. AR 46-47. Lastly, the VE indicated that her testimony was consistent with the DOT. AR 47.

**Medical Record**

The entire medical record was reviewed by the Court. AR 230-1277. The medical evidence will be referenced below if necessary to this Court's decision.

**ALJ's Findings**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard. AR 53-60.

More particularly, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 29, 2008, the date of his application. AR 55. Further, the ALJ identified status post gunshot wounds to bilateral upper extremities and bilateral elbow surgeries, asthma, sleep apnea, and arthritis as severe impairments. AR 55-56. Nonetheless, the ALJ determined that the severity of the Plaintiff's impairments or combination of impairments did not meet or exceed any of the listed impairments. AR 56.

Based on his review of the entire record, the ALJ determined that Plaintiff has the RFC to lift and carry twenty pounds occasionally and ten pounds frequently, to sit, stand or walk for six hours in an eight-hour workday, with the ability to occasionally reach above his shoulder with the left arm, and to occasionally kneel. AR 56-59.

Next, the ALJ determined that Plaintiff was capable of performing his past relevant work as a security guard. AR 59. Alternatively, based upon Plaintiff's age, education, and work experience, Plaintiff could also perform the work of a food preparer, cashier or counter salesperson. AR 59-60. Thus, the ALJ concluded Plaintiff was not disabled. AR 60.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

7

Here, Plaintiff argues that the new evidence incorporated into the record by the Appeals Council establishes his disability pursuant to *Brewes v. Astrue*.

# DISCUSSION[6]

### *The New Evidence Before the Appeals Council*

Plaintiff contends the new evidence presented to the Appeals Council establishes his disability.  (Docs. 19 & 23.)  The Commissioner contends the new evidence does not establish disability.  (Doc. 22.)

In *Brewes v. Commissioner*, 682 F.3d 1157 (9th Cir. 2012), the Ninth Circuit considered the question of whether evidence submitted for the first time to the Appeals Council must be considered by the district court on appeal:

> We are persuaded that the administrative record includes evidence submitted to and considered by the Appeals Council. The Commissioner's regulations permit claimants to submit new and material evidence to the Appeals Council and require the Council to consider that evidence in determining whether to review the ALJ's decision, so long as the evidence relates to the period on or before the ALJ's decision. *See* 20 C.F.R. § 404.970(b ). Claimants need not show "good cause" before submitting new evidence to the Appeals Council. *See id.; see also O'Dell*, 44 F.3d at 858. The Council will grant the request for review "if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record." 20 C.F.R. § 404.970(b) (emphasis added). "Because the regulations require the Appeals Council to review the new evidence, this new evidence must be treated as part of the administrative record." *Perez v. Chater*, 77 F.3d 41, 45 (2d Cir.1996).

*Brewes v. Commissioner*, 682 F.3d at 1162.  The Court concluded, "[w]e hold that when the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence." *Id*. at 1163.  In specifically rejecting Defendant's argument to the contrary, the Court explained:

> First, we do not agree with the Commissioner's contention that Brewes must show that the letter meets § 405(g)'s materiality standard. Section 405(g)

---

[6] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits.  Any omission of reference to a specific argument or brief is not to be construed that the Court did not consider the argument or brief.

8

materiality is not at issue here because that standard applies only to new evidence that is not part of the administrative record and is presented in the first instance to the district court. *See* 42 U.S.C. § 405(g) ("The [district] court may ... at any time order additional evidence to be taken before the Commissioner, . . . but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding."). As discussed above, evidence submitted to and considered by the Appeals Council is not new but rather is part of the administrative record properly before the district court. Here, the Appeals Council accepted Brewes' proffered new evidence and made it part of the record, apparently concluding that it was material within the meaning of 20 C.F.R. § 404.970(b). The Commissioner does not contend that the Council erred by considering this additional evidence.

*Id*. at 1164.

Here, the letters of Plaintiff's treating physicians Lynn M. Nile, M.D., and Ganga Hematillake, M.D., dated June 10, 2010 and July 8, 2010, respectively, were considered by the Appeals Council.[7] Both were made a part of the administrative record. *See* AR 5-6. The Appeals Council however concluded that this evidence did not warrant review of the ALJ's decision. *See* AR 1-2 ("In looking at your case, we considered . . . the additional evidence listed on the enclosed Order of Appeals Council" and "found that this information does not provide a basis for changing the Administrative Law Judge's decision"). Thus, the Appeals Council denied review of the ALJ's April 28, 2010, decision. Accordingly, this Court will consider the letters in its review of this administrative record. *Brewes*, at 1163.

Even assuming the letters of June and July 2010 concern the period at issue, this Court is not persuaded that the letters establish Plaintiff's disability.

Dr. Nile's letter provides as follows:

> To Whom It May Concern:
> Mr. Wardell Jones suffers from chronic depression that becomes severe at times with suicidal thoughts. He also suffers with Post Traumatic Stress Disorder, which is a severe anxiety disorder with paranoia. This developed as a result of being shot while serving as a NYC police officer.
> Mr. Jones is severely and permanently disabled as a result of these mental disorders. Thank you.

AR 1274. The letter does not reference any objective medical evidence in support of its

---

[7]Both letters post-date the ALJ's findings of April 28, 2010.

conclusion that Plaintiff is disabled. It merely records a diagnosis then states Plaintiff is disabled. A disability determination however is left to the Commissioner. See 20 C.F.R. § 416.927(d).

The same can be said of Dr. Hematillake's letter:

> To whom it may concern,
> This letter is regarding the employability of [Mr.] Wardell Jones. Mr. Jones has Post Traumatic Stress Disorder (PTSD) and was evaluated by Psychiatrist at VA Central California Health care System and based on that evaluation he has extreme limitations due to his PTSD and therefore not employable.
> Thank you for your attention to the above.

AR 1276. Again, the disability determination is left to the Commissioner.

To the degree Plaintiff argues that the Appeals Council was required to provide specific and legitimate reasons itself for disregarding the opinions in the letters proffered by Drs. Nile and Hematillake after the ALJ's findings were issued, he is mistaken. The Secretary need not accept a treating physician's opinion that is "brief and conclusionary in form with little in the way of clinical findings to support [its] conclusion." *Young v. Heckler*, 803 F.2d 963, 968 (9th Cir. 1986). Here, two single-paragraph documents that simply list a diagnosis without reference to clinical findings in support thereof may be disregarded by the Appeals Council. *See also Nichols v. Commissioner of Social Sec. Admin.*, 260 F.Supp.2d 1057, 1071 (D. Kan. 2003) (letter directed to Appeals Council from treating physician was "too brief and conclusory" and thus the Appeals Council did not err by failing to give specific reasons for rejecting the letter). Moreover, this Court finds the letters prepared by Drs. Nile and Hemtillake do not amount to new evidence in any event. Dr. Nile authored an earlier conclusory single-paragraph letter dated August 29, 2008, declaring Plaintiff to be unemployable (*see* AR 810), and Dr. Hematillake's letter does nothing more than rely upon Dr. Nile's opinion. At its core, the evidence presented to the Appeals Council offered nothing new. *See Neyman v. Astrue*, 2010 WL 3586689 *5 (D. Or. Jun. 28, 2010).

After an extensive review of this record, this Court also finds the ALJ's reasons for affording the prior and earlier opinions of Drs. Nile and Hematillake their respective weights are proper.

Cases in this circuit distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant. *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir.1987). At least where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir.1991). Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for so doing. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir.1983).

In his April 28, 2010, decision, ALJ Larsen found as follows, in relevant part:

> Primary care physician Dr. Hematillake indicated Mr. Jones's depression and posttraumatic stress disorder were stable on medications and polysubstance abuse was in remission per history. In May 2008, clinician Jeffrey Fay, under the supervision of psychiatrist Dr. Raroque, noted in a mental status examination that Mr. Jones denied depression, and noted an absence of delusional materials. Insight was fair, and judgment was fair. Mr. Fay diagnosed depressive disorder NOS, psychosis NOS, insomnia, and rule out posttraumatic stress disorder (PTSD). He assigned a GAF of 71, indicating mild symptoms, and medication treatment was prescribed of fluoxetine, quetiapine, and seroquel. I have given this evidence significant weight.
> In August, 2008, treating psychiatrist Dr. Nile wrote a letter stating Mr. Jones has been totally and permanently disabled and unemployable from a mental disorder since 2002. She stated he suffers from posttraumatic stress disorder, psychosis NOS, and depressive disorder NOS. She described him as compliant with his appointments and prescribed treatments and therapies. This opinion is inconsistent with the medical record, which shows Mr. Jones, in February, 2007, was using crack cocaine in amounts up to one thousand dollars a week, and obtained money by working under the table in construction, washing cars, panhandling, and hustling. I give Dr. Nile's opinion no weight because it does not take into consideration Mr. Jones's substance abuse disorder in reported recent remission. In November, 2008, Dr. Nile noted Mr. Jones relapsed on drugs and alcohol and spent 2.5 weeks in jail and that time she diagnosed PTSD, psychosis

11

NOS, and depressive disorder NOS. In December, 2008, Dr. Nile indicated Mr. Jones had disabling functional limitations due to depression and anxiety. I likewise have given this opinion no weight because it does not take into consideration Mr. Jones's substance dependence disorder. The medical record shows Mr. Jones went on a cocaine and alcohol binge in July, 2009. In March, 2010, Dr. Nile indicated Mr. Jones was permanently disabled due to posttraumatic stress disorder severe, polysubstance dependence in remission, psychosis NOS stable, and depressive disorder NOS moderately severe. She stated Mr. Jones' treatment had been from March 27, 2003, for about seven years, and Mr. Jones was compliant with the treatment plan, including medication, therapy, and appointments; however, the medical record shows otherwise. I give this opinion little weight because it relies primarily on the subjective complaints of Mr. Jones and is inconsistent with the other opinion evidence of record discussed above.

AR 58, internal citations omitted.

ALJ Larsen afforded Dr. Hematillake's 2008 opinion significant weight because it was consistent with the medical record.[8]

The ALJ found Dr. Nile's opinions were entitled to little weight because the opinions (1) relied upon Plaintiff's subjective complaints, (2) failed to account for Plaintiff's illegal substance use, (3) were inconsistent with the other opinion evidence, and (4) were inconsistent with the medical record as a whole. These are all specific and legitimate reasons.

An ALJ may reject the treating physician's opinion because it was based on the claimant's discredited subjective complaints. *Thomas v. Barnhart,* 278 F.3d 948, 957 (9th Cir. 2002); *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999); *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989). Here, ALJ Larsen determined Plaintiff was less than credible (AR 58-59) and Plaintiff has not challenged that finding on appeal. A contrary opinion of an examining source can constitute a specific and legitimate reason for rejecting the opinion of a treating source. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995). Here, the medical record reveals psychiatric records evidencing the fact that Plaintiff's mental disorders were effectively managed with medications. *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006).

---

[8] Notably, Dr. Hematillake's July 2010 letter expressly references the opinion of Plaintiff's treating psychiatrist, Dr. Nile, and upon that basis, found Plaintiff to be "unemployable." *See* AR 1276. The letter arguably does not even offer Dr. Hemtillake's own opinion.

12

Moreover, a treating physician's opinion that is not well-supported and that is inconsistent with the medical evidence of record need not be given controlling weight. *Lingenfelter v. Astrue*, 504 F.3d 1028 (9th Cir. 2007). This medical record supports the ALJ's findings as Plaintiff's mental impairments are simply not disabling.

### *Drug Addiction Analysis*

Next, Plaintiff contends "the ALJ failed the *Bustamante* standards in rejecting Dr. Nile's earlier opinions." Plaintiff claims the ALJ erred because he used the drug addiction analysis "to discredit [] [Plaintiff's treating] physicians" prior to performing any analysis. (Doc. 19 at 4-6.) On the other hand, the Commissioner asserts the ALJ did not err because the ALJ properly referred to Plaintiff's substance abuse in order to demonstrate inconsistencies between the treating psychiatrist's opinion and the medical record, and to show that the opinion was unreliable. (Doc. 22 at 6-8.)

Title 42 of the United States Code section 423(d)(2)(C) provides that "[a]n individual shall not be considered to be disabled for purposes of [benefits under Title II or XVI of the Act] if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled." *See Sousa v. Callahan*, 143 F.3d 1240, 1242 (9th Cir. 1998). Additionally, the Commissioner's regulations provide as follows: "If we find that you are disabled and have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor to the determination of disability." 20 C.F.R. §§ 404.1535(a) & 416.935(a); *see also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

An ALJ must "first conduct the five-step inquiry without separating out the impact of alcoholism or drug addiction." *Bustamante*, 262 F.3d at 955. "If the ALJ finds that the claimant is not disabled under the five-step inquiry, then the claimant is not entitled to benefits and there is no need to proceed with the analysis." *Id*. However, "[i]f the ALJ finds that the claimant is disabled and there is medical evidence of his or her drug addiction or alcoholism, then the ALJ

13

should to determine if the claimant would still be found disabled if he or she stopped using alcohol or drugs." *Id.* (internal brackets, quotation marks & citation omitted).

A review of the ALJ's findings and this record establishes no error occurred. ALJ Larsen's references to Plaintiff's drug use, when considering Dr. Nile's opinion, were plainly references to the opinion's internal inconsistencies.[9] For example, Dr. Nile opined on several occasions that Plaintiff was compliant with treatments, therapies and appointments, and yet the record revealed that Plaintiff was not in fact compliant. A claimant can hardly be said to be compliant with treatment for mental disorders and substance dependance where the record evidences the continued use of cocaine and alcohol. Moreover, the record revealed Plaintiff missed many appointments. *See, e.g.,* AR 367, 369, 412, 413, 421, 427, 430, 433, 434, 436, 592, 593, 618, 620. The opinion of Dr. Nile was also internally inconsistent where the doctor opined Plaintiff was "umemployable" yet the records maintained by the Veteran's Administration also reference Plaintiff having admitted that he worked "under the table, construction, washing cars, panhandling, hustling." *See* AR 418.

ALJ Larsen's references to Plaintiff's drug use were therefore proper. He "first conduct[ed] the five-step inquiry without separating out the impact of alcoholism or drug addiction." *Bustamante v. Massanari*, 262 F.3d at 955. When he did so, he found Plaintiff was not disabled. AR 55-60. Because he found Plaintiff was not disabled, the ALJ was not required to conduct a second, separate analysis. *Bustamante*, 262 F.3d at 955.

In sum, Plaintiff's characterization of ALJ Larsen's findings in this regard are mistaken. The ALJ's findings are supported by substantial evidence and are free of legal error.

---

[9] Rejecting an opinion that contains internal inconsistencies is a specific and legitimate reason to discount the opinion. *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995) (rejection of examining psychologist's functional assessment which conflicted with his own written report and test results); *see also Buckner-Larkin v. Astrue*, 2011 WL 4361652 (9th Cir. Sept. 20, 2011).

**RECOMMENDATION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, the Court RECOMMENDS that Plaintiff's appeal from the administrative decision of the Commissioner of Social Security be DENIED and that JUDGMENT be entered for Defendant Michael J. Astrue and against Plaintiff Wardell Jones.

These findings and recommendations will be submitted to the Honorable Lawrence J. O'Neill pursuant to the provisions of Title 28 of the United States Code section 636(b)(l). Within fifteen (15) days after being served with these findings and recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: **January 23, 2013**         /s/ **Gary S. Austin**
                                    UNITED STATES MAGISTRATE JUDGE